The 4th District Appellate Court of the State of Illinois has now convened. The Honorable Craig H.D. Armon presiding. Morning, Counsel. We'll call 4-22-0820 Estate of Meyersick v. Schultz. If I'm pronouncing that correctly. Could Counsel for the Appellant please state your name for the record. John Spezia. And Counsel for the Appellate, could you please state your name for the record. Randall Meade. All right. Thank you, Counsel. Mr. Spezia, you may proceed. May it please the court, Counsel. My name is John Spezia and along with my associate, Allie Harms and our law clerk Michelle Cavanaugh, who are behind the screen I guess here, we are. We're here on behalf of Joyce Hyland and Melissa Greenwood, the plaintiffs and the appellant in this case. I think that the reversible error that occurred in this case is best summed up in the direction that I was given by the trial court before the trial started. And it was a direction regarding the defendant's obligation to warn other motorists. At the record, page 55 and 56, the trial court said, quote, as far as the defendant is satisfying some duty or obligation by warning or that he had to warn, you're going to have to kind of parse how you bring that up. You can bring up he did do X, Y, or Z, but not that a reasonable person must or should have warned oncoming traffic. That's problematic right there. So the plaintiff in this case throughout the trial had to parse how we brought up the issue of a warning. We had to parse the plaintiff's argument about the defendant's obligation to warn other motorists, which is clearly recognized by Missouri law. The plaintiff had to parse how to explain. Good morning, Mr. Station. Excuse me. Since we're talking about the duty of care and really that gets us into the conflict of laws issue here where you were talking about, you needed to at the trial level, parse these different standards. Illinois, of course, had a different standard, one of ordinary care to avoid a collision and Missouri something a little more that went a little further. When a driver had a stalled vehicle that was obstructing, there was a duty to warn. But in this case at the trial level, the plaintiff did not even tender jury instructions on the duty to warn under Missouri law, did it? Yes, we did. You did tender jury instructions? Okay. Found at the common law record C-1255. Okay. We tendered a construction at C-1255 that was refused by the trial court. And that instruction was actually modeled on, it was tailored after the instruction that was given in the hacker case, the Missouri appellate court case that we cite. So, I want to clarify with this, the instruction that we didn't give a separate duty instruction. Oh, okay. What we did is what they did in hacker and that is we gave a separate instruction here that in subparagraph five, use the words failed to warn. So, in essence, and I'm glad you brought this up. Our position is that there are two components of the error here. One is that we were prohibited throughout the course of this trial from arguing that there was an obligation to warn. The second is that that resulted in an instruction that was given to the jury that allowed them to decide as a question of fact, whether there was such an obligation and it should have been a question of law. And so what we did in this case is we submitted. It was plaintiffs 11 and 12 that was for counts one and two, and those are found at C 1255 is 11 and 12 is is found at C 1223 those were refused by the trial court. What we did here is so we modeled a proposed instruction after the instruction that was given in the hacker case, which would have put us in the same position as as basically a statutory violation. So where we could have argued that in fact the defendant had an obligation to warn, and that the jury should consider the violation of that obligation as one component one fact to determine whether there was negligence. Instead, the trial court gave an instruction. That's found at 1253 C 1253, and in that instruction. The in subparagraph five. The trial court says. The instruction was that the defendant failed to act as a reasonable person by failing to warn. That in our position that put the jury in the position of them deciding whether there even had to be a warning. And, and that is, that's the really the second error in this case, the second error in this case is the way the jury was instructed. Mr spaceship Can I take you back, maybe procedurally. How did the whole issue of the conflict of laws come up in the litigation. The issue of the conflict of laws came up in the litigation. When we argued defendants motions in limiting. That's when it first came up. And there was an eliminate emotion that sought to eliminate out any argument about a duty to warn. The court ruled on the motions eliminate and set up the conflict, because he said there was no duty to warn under Illinois law. So, then we, you know, then we briefed the issue of the conflict of laws. Did you have a subsequent hearing on that. Yes, we did. Okay. It was heard in connection with. It was heard in connection with the, with the motion to reconsider. And that was, that was shortly before trial. So, the first order entered by the court on this issue of the duty to warn was, it's at C 560. And that was December 9 2021. The, the clarification of that order which rejected the application of Missouri law was filed, April 13 2022. And your position throughout was that this was a legal issue that should be decided by the court. I think the conflict of laws and what law applies is in fact a question of law. Yes, sir. Right. Okay. When it came time for jury instructions in spite of the court's rulings, you did go ahead and submit instructions that reflected your position. Yes, I did. And that's, like I said, for count one it's at C 1255, and the court's ruling on the court's ruling and his rejection of that instruction is that are four to six, where he refuses the instruction. Go ahead. Thank you. Okay. So, that there seems to be, in my mind there's there's little question that Missouri law should have applied in this case, if we go to the, you know, if we go to Townsend, or this court's decision in Perkinson, which, which applied Townsend. The, the isolated in particular question here whether there's a duty of warn duty to warn is one that focuses on the defendants conduct. And we know that and it's undisputed that all of that conduct occurred in Missouri, it occurred on a Missouri State Highway, the injury occurred in Missouri. And the presumption was that Missouri law applies. And the other important thing here is that the defendant has really done nothing to show that the state of Illinois has more significant, a more significant relationship with this occurrence. So there's nothing to it didn't have to pardon me, they didn't have to based on the ruling of the court. Right. Well, I think when we, when we argued the, the conflict of laws issue. And at this stage of the litigation the defendant in order to avoid the presumption, the defendant would have to show that Illinois has a more significant relationship to this case. And I would submit that the facts here are really no different than what this court addressed in Perkinson, where the court says the plaintiff and defendant are both Illinois residents. The incident occurred in Missouri, and the trial court applied Missouri law, this court affirmed and said that the conduct on this case that the court said the case, almost exclusively involved the party behavior and conduct in Missouri. That's the fact here. So, you know, back to the back to the the prejudice and the effect on the, on the outcome of the case. Not only were we prohibited from saying that the defendant had an obligation to warn of what was all the witnesses said was a terribly dangerous condition, a dark highway a two lane highway, a car in the southbound lane facing northbound at best with one headlight on. And we're prohibited from arguing any of that. But on top of that, the, the trial court then allowed the defendant to rely on the circumstances that were presented by these prior passers by the Leonard's. So, while we're, we've got our hands tied behind our back, and that we can't, you know, argue an obligation to warn. You've got defense counsel and he's even on appeal saying Leonard approach, and the defendant was flagging down drivers standing in front of his truck waving his cell phone. He argues that the plaintiff should have safely stopped just like the Leonard's did. Well, that's interesting because the trial court specifically barred me from making that argument. And this is that see 560 in the record in his order he says plaintiffs counsel just wants to be able to ask the jury if his client was owed the same type of flash amount of warning that the first vehicle that came upon the scene had. This is an improper argument. And the basis for saying it's an improper argument is he says there was no duty to warn. So, the fact that the trial court barred us from making it the argument that is perfectly valid under Missouri law alone is reversible error. The fact that he turned the duty to warn into a question of fact is reversible error. And for that reason alone. This case should be reversed and remanded for a new trial. Council before you move on, I'd like to ask the question, do you happen to have the instruction tender before you. And if you do. Can you cite to us the language, the warning language I know that there's language to guard the moving the vehicle but what about guard the warning. Yes, I do have in front of me your honor. So, and this is, I'll read from the instruction on count one count two was the identical allegation, but it says in paragraph five, quote, failed to warn motorists of the obstruction of highway B and the dangerous condition caused by his vehicle. Thank you. Okay. I'd like to touch on this. The other issue I'd like to touch on is the, the rule to 19 to 19 see request for fees and expenses. And I want to start by this, I want to start by addressing some of the arguments that are made by the defense here they're really attacks on plaintiffs counsel which is me. And, you know, they accused me of sharp practice of lying in weight of lying in the weeds in an ambush of having an improper motive. And I would just like to lay out the facts here. So here are the facts. The fact is that spacious came into this case file an appearance on July 29 2021. I filed an appearance because plaintiffs counsel, Stan Tucker died. So I came into the case, July 29 2021. When I came into the case, the cause of death had been denied in a request to admit. There was a death certificate that was pretty clear that being Myers said died in a car accident on Highway B in Missouri, that's what the death certificate says. So, here I am, I've got the burden of proof. I come into the case, July 29 2021. I request medical records and I received medical records on August 10 2021. I produced them to the defendant on August 12, and I was able to get an evidence deposition of Dr Rayburn set for August 30 2021. So in 30 days, within 30 days be involved in this case. I had requested records, I had received records, I have sent records, and I went and took the evidence deposition of Dr Rayburn, what was the urgency. The urgency was the case had already been set for trial for once and I'm coming into a brand new case. So, those are the facts. I didn't have time to lie in wait. I didn't have time to develop some evil motive. What I was trying to do is prove my case because that was my obligation as a lawyer, as the plaintiff's lawyer. So, it seems to me that the rule is pretty clear. There was a request to admit that was denied. And the defense, and it sounds like from the reply or the response brief the insurance company, which didn't want to spend any money on the case forced the expense of the doctor on me. So, we, we issued a special interrogatory trial, and we proved the fact that they denied. Now, the question then becomes, was there a good reason. And I would submit to the court that the good reason that has been proffered here is really no reason at all. So, what the defendants now say is that the nature and extent of the injuries were never important to the defense. They call the injuries here irrelevant. The medical, they say, this is in footnote one, they say is irrelevant. And they tell us that it's expensive. It's expensive to get medical records. Yes, it is expensive to get medical records. But the fact of the matter here is that this case had been pending for a year and a half before the defendant denied the request to admit. The death certificate had been available for, I think, three and a half years by that time. And the death certificate is abundantly clear. If there were some question, and I think this is really telling, the defense didn't, they didn't even ask for a discovery deposition of Dr. Rayburn prior to the evidence deposition. Now we know it's because they thought it was all irrelevant. And that's fine. You can take that position as the defendant. The insurance company can take the position that they're not spending any money on this. But that's the purpose. That's why the rule is there. The rule is there so that under those circumstances, where the defense never develops any evidence, never makes an argument that the cause of death wasn't related, then the burden shifts to them. And my experience in 30 years is defendants don't like it when they have a burden. And so, thus, the attacks on counsel, instead of what is the good reason. There's been a bunch of things offered here for what is the good reason, and they finally told us it's irrelevant. So, the request to admit was denied. The plaintiff spent a bunch of money and time proving that fact. There is no good reason. And so, the courts should award the fees and expenses. I'd also like to point this out. When I took the evidence deposition of Dr. Rayburn, and after I met with him, and that's in the record, you'll see a charge for my meeting with Dr. Rayburn. I had to walk through the orthopedic injuries, which caused him to become sedentary, which caused his pneumonia, and ileus, which ultimately caused cardiac arrest. So, the idea that, well, you know, you're not entitled to your fees because maybe you proved more than what was in the request to admit, to me, should be discarded. The fact is the only way at that point that I could prove the cause of death was with Dr. Rayburn. And if you read his testimony, it's clear that the orthopedic injuries, the hip fracture, the ankle fracture, the rib fractures, the sternum fracture, all made him sedentary, which caused pneumonia, ileus, and led to the cardiac arrest. So, our position in this case is that there's no question Missouri law should have been applied on this obligation to warn. And on the 219 issue, it seems to me that in circumstances where the defendant's position is that the medical was just irrelevant to them, this is exactly the kind of case where there should be a fee and expense shifting. So, we're asking that this case be remanded to the trial court for a new trial, be remanded to the trial court for entry of an order awarding those fees and expenses, and or entry of a J&O fee. So, thank you for your time. Thank you, counsel. Counsel for the appellate, you may proceed. Thank you, your honor. Let me start with an apology. In preparing for this oral argument, I reread my brief. It is replete with word spell errors and formatting problems that are below my standard, and I don't know how it got out over my name. But I wanted to apologize to both the court and counsel for the way it appears. I should, after four decades of doing this type of work, know how to spell the word wave. That being said, the substance of my brief is still very good, and I'd like to start by talking about causes and conditions. The appellate court, as this court has held both in Ackerman in 2014 and in Diocese of Quincy in 2016, that you can affirm the trial court for any reason or ground appearing in the record, regardless of whether the particular reasons given by the trial court or its specific findings are correct and sound. So we have here a case that falls into the category of a condition rather than a cause of this injury and death to the plaintiff's decedent. As the Supreme Court said in First Springfield Bank versus Gallman said it in our brief, whether the negligence charged does nothing more than furnish a condition by which the injury is made possible, then that condition causes an injury by the subsequent independent act of a third person. The creation of the condition is not the proximate cause of the injury. There's also the case of Wilmer versus Steibolt, a First District case from 1987, which says that in looking back at these cases, you're not to use the judgment of hindsight vision, but to look at it from the standard going forward of a prudent person and what they would do. So the situation that we have here, I think, is apparent. We have a guy who ran into a deer or vice versa. He gets knocked to the wrong side of the roadway, primarily into the ditch with a little portion of his car obscuring the southbound lane of traffic. That's not his fault. It was a deer accident. Even the state trooper testified that those are common in that particular area. His car was immobilized due to the accident. He couldn't move it. He tried to move it. He did issue a warning in the terms of his headlight being on, which Mrs. Lienertz, if I'm correctly pronouncing that, testified looked like a motorcycle coming at her in her lane, and he activated his hazard lights, which is further warning. And he's doing probably what we would call the feeble effort of waving his cell phone around, which has a light, trying to add further warning. But we have no evidence that he had any other means of doing any warning, that he had any other means of trying to move his car. And we know he tried to move his car because of the skid mark testimony and the testimony of the independent eyewitnesses. So we have a guy who, through no fault of his own, finds himself in a predicament on the wrong side of the road. And he's trying his best to remedy that, given the limited amount of resources he has available. He's following a plan in part developed by him and the passersby to go get help at the nearby Stubbs garage. And all that's going on when Mr. Myers comes along as he admitted to his physicians at a high rate of speed and runs into the Monroe vehicle. So, under those circumstances, I think this court can simply affirm on the basis that there's no duty owed because this was a condition and not a duty analysis, but there is no proximate cause because this resulted in a condition, which the subsequent negligence of Mr. Myers acted upon to cause the accident and not a cause itself. Well, counsel, could he not have called 9-1-1? I mean, there was testimony that others called 9-1-1 subsequently when the collision occurred and they got there in no time, rather than having decided to execute this plan where somebody was going to go get some tools and bring somebody else back to help. I mean, isn't that what should have been done? Well, that's the hindsight of 2020 vision that the court addressed in the case I referred to earlier, but that could have been done and it may have been done. You know, we're plagued here by the fact that neither Meyersick nor Monroe are alive. The other participant in this accident, Mr. Dolbear, had scant memory of what happened and other than he got hit head on by Meyersick's vehicle. There was testimony of 9-1-1 calls being made, unknown by whom, and there was testimony from the police officer, as I recall, at the state police officer, who said that we got a phone call about the deer accident and I was en route in response to that call, which would have been the early call. And by the time I got there, I got another call about the secondary accident. So there was not a luxurious amount of time. We're talking about maybe six minutes here, depending on how you count the minutes. And so, you know, while it's technically feasible for him to have done so, we're not sure whether he, in fact, did not do so. We know from the testimony of the independent witness that he was making a call or had tried to call a relative. I don't know that it was exclusive that that's what he tried to call. There were calls received by both Missouri and Illinois, as I recall. So I think that given the circumstances he was in, he did a good job of trying to remedy the situation. Was it perfect? I doubt it. But that's not the requirement that we face in life. It's reasonable care. So I think that this falls within that condition category. Moving on to choice of law, the judge looked at this quite carefully and in the excerpt from his opinion that's quoted in the plaintiff's brief, the Missouri law says, except in the case of an act of an act accident, resulting in the injury or death of any person. The driver of a vehicle, which for any reason obstructs the regular flow of traffic on a roadway of any state highway shall make every reasonable effort to move the vehicle or haven't moved so as not to block regular flow of traffic. Okay, the Illinois law 625 ILCS 5 slash 11 dash 402A says regarding what, if any, a primitive conduct a driver may have after a collision, the Illinois vehicle code states, if a damaged vehicle is obstructing traffic lanes, the driver of the vehicle must make every reasonable effort to move the vehicle or haven't moved so as not to block the traffic lanes. So pretty much identical. And before we even embark on choice of laws analysis, there has to be a qualitative distinction between the laws of the two states to be considered. There doesn't appear to be one. Now, beyond that, even, they were able to make their claim for violation of a failure to warn as laying out in the instructions given to the jury. The only thing that the plaintiff lost by this ruling was the ability to give a 60.01 jury instruction on the statute the statute requires. As I point out that every one of those instructions ends with the paragraph, the law, you know, the law doesn't say what a reasonable person was. You may consider this along with all the other evidence to determine whether a party was negligent at the time of the occurrence. Okay, so it throws it right back to the jury. This is there's no per se liability for violation of a statute in Illinois, as we all know. So, that was one thing they could have considered, but they considered the entirety of the plaintiff's claim as it was presented. It was alleged we didn't warn. It was alleged to the jury that we didn't move our vehicle as quickly as we could have. So, the facts don't support the premise that Mr. Monroe didn't warn. As I pointed out, you know, we don't have any guidance from the Missouri statute as to what kind of a warning is required and under what circumstances. You know, it's not like the statute says you must have road flares in your trunk and use them if you can't move your car. It says you must give a warning. He had a warning. He turned his hazard lights on. He had a warning. He had left his headlight, one headlight on. He had a warning. He's waving his flashlight or his cell phone around. You know, all reasonable things to do, I guess, under the circumstances thrust upon Mr. Monroe by this occurrence. So, there was a warning, you know, if you want to go that far. I'll move on, unless there are questions, to contributory negligence, the affirmative defense being allowed on the eve of trial. And there, 635 ILCS 5-2-616 provides that amendments to pleadings can occur to conform with the proof even after the trial. Now, in this case, the plaintiff's attorney had the medical records, which formed the basis of this claim far before the defendant did, and knew what was coming with that. A seasoned trial attorney would see that admission in there and know it was coming. So, the facts here have never been a surprise that this claim was being made and relying on the law as to when you can amend your defense. There's certainly no error here in following the law and certainly no prejudice to the plaintiff. And that's probably the most important aspect of this argument because there was no apportionment of damages. So, the jury just ruled in favor of the defendant and against the plaintiff. That could have been because he was more than 50% contrived. That may have been that he just didn't meet his burden of proof on a duty owed or for some other reason. And the jury was justified in making that given the ample evidence of the reasonable care that Monroe took in this situation. So, the plaintiff is unable to prove that the addition of this defense altered the result of the trial in any way because they submitted no special interrogatory regarding that. And so, we just don't know what the jury did. The plaintiff has to prove that that prejudiced the outcome and they can't meet that burden. Moving on, I'm sorry. Moving on to the sanctions for Dr. Rayburn's deposition. We have a situation where my now retired partner who tried this case, Rick Narep, responded to a request to admit by prior counsel early on. Saying, defendant has never been presented with medical records to substantiate that Dean Myersick died from injuries he sustained in the auto accident of November 10, 2015. Defendant believes this paragraph is probably correct. But if the administrator is in possession of said medical records, she has not produced them. And because of this, we must deny this paragraph. Exactly what the rule requires, 216C. Any objection to a request or to an answer shall be heard by the court upon prompt notice and motion of the party requesting it. But beyond that, it goes on to provide that if you're going to deny this or don't have the information necessary, you have to lay out what the reason is that you don't have that information. That's exactly what Rick did in this case. And then after that, nothing. Nothing. Until the, you know, after the trial when it's like, oh, you know, pony up thousands and thousands of dollars that we could never get back if we'd even won this case. We'd be limited to the transcript of the deposition as costs of suit. But now you have to pay us everything because, you know, without even saying, hey, Rick, why don't you take another look at this request to admit? I think you've got the medical records now, which were received, what, two weeks before the evidence deposition of Dr. Rayburn, despite his having a request to produce, despite the plaintiff's ongoing duty to produce these records pursuant to that. Those were kept from us. We were never able to make that determination. And this was a 12-day hospitalization where anything could have happened regarding the cause. I mean, for all we knew, and we were, of course, prohibited from getting medical records without a subpoena and a HIPAA order, which in the exercise Rick's judgment at that time was not necessary because it just wasn't a big factor in the case, as I pointed out. I know it's weird to say that, but that's why I included that footnote to explain that. So we can't be sanctioned because we're guilty of failing to do the plaintiff's job for him. The plaintiff should have had these records early. The first counsel should have had these records early on. That's due diligence. He should have produced them to us. And then Rick could have made an independent determination just as he said in the response as to whether there was some intervening cause of death. Is there some latent problem that he had that killed him regardless of this accident? If there was malpractice by the, you know, whatever it was, we could have discerned that had we just been given the records we requested. But instead, not a word is said about the request to admit until after the trial. That's why I say the things I do after, and that's including my four decades of practicing as a trial lawyer. So I think that this is indeed sharp practice. And I say it in a bash on the part of the plaintiff's attorney to try to claw back some money that they're not entitled to after we did our best to answer the request to admit truthfully based on the information we had, which was scant. And the information we needed was in possession of the plaintiff. There are ample reasons, evidence about the fact of this accident that justifies a decision in favor of the defendant. The jury didn't go rogue. They listened to all this evidence. There's evidence as to the care taken after this situation was thrust on Mr. Monroe. His efforts to warn, his efforts to call somebody, his efforts to move the car which failed, his launching of a plan to try to get the car moved. So there's plenty of reason to justify this verdict and to sustain it. It's not that the evidence is so weak it requires a new trial or a JNOP that's also requested. I welcome your questions. I see none. Thank you, Counsel. Thank you. Counselor for the appellant, rebuttal. You're on mute, sir. I guess the first thing that comes to mind here is that there's a case that I think we're all familiar with in Illinois that says that the rules of the Illinois Supreme Court are not aspirational. They have the force and effect of law and should be applied as written. That's what that's that bright versus Dickey and shred packs and a bunch of cases after that. And one of the rules of this court is that you have to rely in the appellate court on facts and you have to cite to the record. And I guess one thing that's surprising to me is that we're here talking about things that are not facts that were proven at trial again. I counted 100 times in their brief where they made an assertion of fact with no site to the record. And the reason is there was no site to the record. So counsel just alluded to Dr. Rayburn's testimony about the speed of the plaintiff, which was specifically barred from evidence by the trial court and never got in front of the jury. He refers to he says that his client may have called 911. That's not true. The evidence at trial from Branson Wells from Jessica Douglas was there were no 911 calls prior to the time that the airbags went off. OK, his his suggestion that that the that the trooper the trooper Hoover had noticed of the deer collision is not true. It's not true. It's not in the record. They can't provide a site for it because there is none. The timeline here is that the initial call to Quincy was at 533 p.m. and it was about a three car collision. The only three car collision that night was Meyersick, Monroe and Dolbear. That's 533 p.m. The first call to the trooper isn't even till 538. That's not true. It should be disregarded. And this is the reason that their brief should really be strict. So let's go to the other thing that they say here. He says, oh, and this is what we this is what we're talking about. He says, oh, the defendant made all kinds of warnings. He said, oh, there were headlights. There were flashing lights. There were hazard lights. At the time of the that that might be true when the Leonards were approaching. OK, but at the time of the collision, there is testimony from one person about what the defendant's car looked like. That's Jackson Dolbear. And Dolbear says that car was dead. There were no headlights. There were no taillights. So I look, I appreciate they have to make an argument, but there's a reason for rule 341. You have to be able to cite to the record and they can't. I will say this is argument on cause versus condition. Here's the significance. He talks about talks about the two statutes that are the same. There's a Missouri motor vehicle code is basically identical to the Illinois motor vehicle code. That's not even the issue for the conflict of laws. Disregard that. That's a distraction. Here's the significance of those two statutes, the existence of those two statutes. The significance is they show that even the legislature knows that is foreseeable, that if you leave a car on a highway, someone is going to get hurt. It's a safety statute. That's the Freeman case. So that's the significance. And why am I talking about foreseeability? Let's talk about his intervening act argument. Reject it. Reject this idea that there's an intervening act. Why? Because the defendant's car in this case, it was foreseeable that it was going to cause a collision, that someone was going to get hurt. Why? Because it's dark. It's on a curve. It's in the wrong lane. It doesn't have any headlights on or any lights at all, according to Joe Bair. And the defendant's doing nothing to warn at the time. According to the trooper, he's on his phone. And if you don't think foreseeability, even Ken Leonard said that he knew something was going to happen if that car didn't get off the road. This is not an intervening act case. And their arguments about the about the conflict of laws do nothing except establish that this was foreseeable. So. I'm going to ask that the court once again ask that the court remand this case for a new trial on the J.N.O.V. issue. And the reason that I brought the J.N.O.V. is because even the timeline of the defendant here shows that the defendant had thirty five minutes to call 9-1-1. Thirty five minutes. And the LaGrange PD responded to this in two minutes after they were dispatched. I think it was six or seven minutes after the time that Meyerthix airbags went off. So. This is, in fact, the case that needs to be remanded so that the plaintiff gets a new trial. So I thank the court for for your time and I'd be happy to answer any questions. Seeing none. Thank you, counsel. The court will take this matter under advisement. The court stands in recess.